FILED
04/09/2025
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 8, 2025

## STATE OF TENNESSEE v. NATASHA LYNN BRYANT FULTS

**Appeal from the Circuit Court for Warren County**
**No. 23-CR-4109     Larry B. Stanley, Jr., Judge**

_____

### No. M2024-00796-CCA-R3-CD
_____

Defendant, Natasha Lynn Bryant Fults, was indicted by a Warren County Grand Jury on two counts of tampering with evidence. *See* T.C.A. § 39-16-503. Pursuant to a plea agreement, she pled guilty to both counts with the trial court to determine the length and manner of service. The trial court sentenced Defendant as a Range I offender to serve five years incarcerated. Defendant appeals, arguing the trial court abused its discretion by not sentencing her to split confinement or alternative sentencing. Following our review of the record, the briefs of the parties, and the applicable law, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Jessica F. Butler and Kendall Stiver Jones, Assistant Public Defenders – Appellate Division, Franklin, Tennessee (on appeal), and John Partin (at plea hearing and sentencing) and William L. Cathcart (at sentencing), Assistant Public Defenders, McMinnville, Tennessee, for the appellant, Natasha Lynn Bryant Fults.

Jonathan Skrmetti, Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; Christopher R. Stanford, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Factual and Procedural Background

On June 2, 2023, Defendant was indicted by a Warren County Grand Jury on two counts of tampering with evidence. On February 28, 2024, Defendant pled guilty to both

counts, with the length of sentence and manner of service to be determined by the trial court. The facts underlying the plea were set out at the plea submission hearing as follows:

> [O]n or about February 2, 2021, Japeth Brey Gilley was shot in the head with a .22 caliber pistol at [an apartment]. . . in Warren County, Tennessee. No one at the residence, including [Defendant], called 911. Subsequently, it was our best evidence that [Defendant] and another individual . . . load[ed] the body of Mr. Gilley into [Defendant's] car. [Defendant] proceeded to drive toward Coffee County with the body for a period of time and then returned back to McMinnville. She then contacted another individual, David Caswell, and pick[ed] him up at the Scottish Inn in McMinnville. They proceed[ed] to drive around and at some point [Defendant went] through Mr. Gilley's pockets and located three .22 caliber rounds in his pocket and thr[ew] them out of the window. [Defendant] and Mr. Caswell dr[o]ve around parts of Warren County and later arrive[d] at River Park [Hospital] at approximately 5:50 p.m. So [Defendant] drove around with the body for somewhere between one and two hours . . . prior to taking the body to the hospital and that [drive] covered approximately [forty-six] miles.

At the sentencing hearing on May 8th, 2024, the State entered the pre-sentence investigation report without objection. Investigator Aaron Roberts then testified that he, along with a team of law enforcement agencies including the Warren County Sheriff's Department, McMinnville Police Department, Tennessee Bureau of Investigation, and investigators with the district attorney's office, investigated the February 2, 2021 shooting death of Japeth Gilley. His testimony was consistent with the facts presented at the plea hearing. Defendant admitted to Investigator Roberts that she removed rounds from Mr. Gilley's pocket and "tossed them" over the bridge. Investigator Roberts also testified about Defendant's criminal history, and judgments of Defendant's convictions from Warren, Van Buren, and Sequatchie counties were entered as a collective exhibit.

Mr. Gilley's grandmother and his aunt gave victim impact statements describing the impact Mr. Gilley's death had on his family, especially his young children, and they asked for the maximum sentence allowed for Defendant's charges.

Defendant's father, James Bryant, testified that Defendant had come to stay with him in Soddy Daisy shortly after the incident. During her stay, Mr. Bryant claimed that Defendant drove to Miami South Beach seeking rehabilitative treatment but was refused. Soon after, "[they] put her on a plane and sent her out to Montana to another rehab" which went "real well until she quit and came home." Defendant made a third attempt at rehabilitation in "either Mount Juliet or Lebanon," and did well there until she quit because she wanted to come home on the weekends. Mr. Bryant testified that as a condition of one

of Defendant's prior charges, she attended and graduated from drug court on February 22, 2018.

After completing drug court, Defendant married Terry Fults soon after he had been released from prison on drug-related charges. According to Mr. Bryant, the marriage was problematic because "if you're a drug addict, you can't be around other addicts because you're going to use together." Defendant was at her best while she was "in a strict rehab." He explained, "She d[id] better when she [knew] she had to have a drug test, and she [knew] she had to go to meetings."

On cross-examination, Mr. Bryant agreed that Defendant's previous failures in her rehabilitation efforts were primarily caused by her association with her friends back home. He also acknowledged that Defendant had multiple convictions after graduating from drug court in 2018.

Brad Price was the program director for the Adult Recovery Court in Warren County at the time of Defendant's graduation from drug court in 2018. He explained that Defendant had been furloughed to drug court after her probation had been revoked. Mr. Price testified that Defendant incurred ten sanctions during the term of the program, but all of them were near the beginning. He further testified that Defendant dealt with each of the sanctions as they were brought to her attention. On cross-examination, Mr. Price agreed that following Defendant's graduation from the program, she violated her bond conditions on January 11, 2022, and was convicted of driving under the influence in August 2022. He explained the program kept track of whether drug court graduates re-offend to determine the program's success rate. In speaking on Defendant's case, he stated, "she was one of our failures."

Matt Nabors was a case manager for Upper Cumberland Human Resource Agency Community Corrections Day Reporting Center and testified that the program was "a very intense drug and alcohol outpatient treatment program" that provides a number of other resources to participants such as "adult education, reentry planning, parenting skills, health and wellness, [and] job readiness skills." Defendant had been assessed for the program and accepted. Mr. Nabors testified that individuals generally do not remain sober upon their first attempt at rehabilitation.

Defendant gave an allocution, wherein she stated, "I wish I could go back and change my actions and my decisions that I made that night in that car, but I was in shock to the fullest." She said that she was scared and attempted to help Mr. Gilley by taking him to the hospital. She claimed she helped Mr. Gilley out of the car and into the hospital and regretted not staying at the hospital to answer questions. Defendant apologized to Mr. Gilley's family and expressed her intent to seek rehabilitation for her addictions.

At the close of evidence, the trial court found that Defendant was a Range I offender and that the two C felonies to which Defendant had pled guilty carried a sentencing range of three to six years. The trial court found that none of the mitigating factors raised by Defendant were applicable. However, it found that two enhancement factors applied. First, the trial court acknowledged that while Defendant had no prior felonies, she had an "extensive criminal record," consisting of a number of misdemeanor convictions to enhance her sentence. *See* T.C.A. § 40-35-114(1). Second, the trial court found that Defendant "committed a crime when [Mr. Gilley] obviously had a very serious risk of death or serious bodily injury[.]" *See id.* § -114(10). The trial court declined to find that Defendant acted with exceptional cruelty as requested by the State. *See id.* § -114(5).

The trial court next considered the possibility of split confinement or alternative sentencing. It considered the pre-sentence report, the relevant mitigating and enhancement factors, the evidence introduced at the sentencing hearing, Defendant's mental and social history, and the facts and circumstances of the case. The trial court observed that Defendant had acknowledged her addiction and had sought rehabilitation to attempt to address her addiction but that she had been unsuccessful. The trial court also noted that, despite acknowledging her addictions, Defendant continued to "remain around people who were in the same sort of circumstance." The trial court also discussed Defendant's extensive history of misdemeanor convictions and the fact that she had not been able to abide by probation as reflected in her three prior probation violations. The trial court concluded, "I think [Defendant has] proven over and over again that she will not be rehabilitated. I cannot say that she would abide by the terms of probation."

The trial court also said that the interest of the community of being protected from future criminal conduct "is very serious" and "I want people to understand that when something happens [that] you have an obligation to call law enforcement to seek help for someone else [and] that covering your own behind is not something that you can do without consequence." Finding that full probation would seriously depreciate the seriousness of the offense, the trial court imposed concurrent five-year sentences for both convictions to serve in the Department of Correction.

Defendant's premature but timely notice of appeal is now before this court. *See* Tenn. R. App. P. 4(a), (d).

**Analysis**

Defendant asserts that the trial court abused its discretion by not granting her split confinement or alternative sentencing. The State responds that the trial court properly exercised its discretion in imposing a sentence of confinement. We agree with the State.

- 4 -

On appeal, the party challenging the sentence bears the burden of establishing that the sentence is improper. *State v. Branham*, 501 S.W.3d 577, 595 (Tenn. Crim. App. 2016). The "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *see State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

While a trial court must place its reasoning for imposing a specific sentence into the record to allow for appellate review, "there is no requirement that such reasoning be particularly lengthy or detailed." *Bise*, 380 S.W.3d at 706. A trial court's denial of probation "will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." *State v. Sihapanya*, 516 S.W.3d 473, 476 (Tenn. 2014); *see* T.C.A. § 40-35-210(b)(1)-(7).

A defendant is eligible for probation if the sentence imposed is ten years or less. T.C.A. § 40-35-303(a). However, a defendant must establish suitability for probation by demonstrating that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002); T.C.A. § 40-35-303(b). "A sentence is based upon 'the nature of the offense and the totality of the circumstances,' including a defendant's background." *State v. Clark*, No. E2022-00667-CCA-R3-CD, 2023 WL 6442974, at *4 (Tenn. Crim. App. Oct. 3, 2023) (quoting *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991)), *perm. app. denied* (Tenn. Mar. 7, 2024). In considering whether to impose probation, a trial court should look at: "(1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) special and general deterrence value." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017). A sentence of incarceration should reflect consideration of "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant," in addition to whether:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. §§ 40-35-103(5), (1)(A)-(C).

In this case, Defendant pled guilty to two Class C felonies and was sentenced as a Range I offender. A Range I sentence for a Class C felony is three to six years. *See* T.C.A. 40-35-112(a)(3). Defendant does not raise the length of her sentence as an issue on appeal but argues that the trial court erred by denying her split confinement or alternative sentencing.

In concluding that neither split confinement nor alternative sentencing was appropriate, the trial court considered Defendant's extensive misdemeanor criminal record of twenty charges against her from the ages of nineteen through thirty-six, as well as her social history, and physical and mental health. *See Trent*, 533 S.W.3d at 291. It also considered the circumstances of the case, stressing its finding that Defendant acted with an intent to impede law enforcement's investigation. *See id.* Moreover, the trial court considered Defendant's amenability to correction, finding that Defendant had failed and given up on attempts at rehabilitation for her addiction, *see id.*, and that Defendant had been unsuccessful on probation on three prior occasions. *See* T.C.A. § 40-35-103(1)(C). The trial court also determined that confinement was "necessary to avoid depreciating the seriousness of the offense." *See id.* § -103(1)(B).

Defendant asserts the trial court based its decision to sentence Defendant to full confinement on an "erroneous assessment of the proof regarding [Defendant]'s potential for rehabilitation and her amenability to correction." She argues the trial court ignored evidence that Defendant's criminal conduct was a result of her addiction, that individuals with drug addictions often attempt rehabilitation multiple times before successfully becoming sober, and that she had been accepted into another rehabilitation program. However, the record reflects that the trial court explicitly considered whether Defendant would benefit from a rehabilitation program and addressed her three prior failures to complete a rehabilitation program and her two re-offenses after graduating from drug court in 2018.

Because the record reflects that the trial court fully considered the purposes and principles of sentencing, it did not abuse its discretion in denying Defendant a sentence of split confinement or alternative sentencing. Defendant is not entitled to relief.

**CONCLUSION**

For the foregoing reasons, the judgments of the trial court are affirmed.

s/ *Jill Bartee Ayers*

JILL BARTEE AYERS, JUDGE